Argued and submitted November 20, 1998, reversed and remanded for new trial
September 15, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# LISA JOY THOMPSON-SEED,
*Appellant.*

## (69939; CA A97239)

986 P2d 732

Robin A. Jones, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Sally A. Avera, Public Defender. With her on the reply brief was David E. Groom, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Haselton and Wollheim, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals her convictions for negotiating a bad check and theft in the second degree. Her principal contention on appeal is that the trial court erred in admitting certain bank records that were obtained in violation of applicable statutory procedures for obtaining such records. The state concedes that the records were obtained without following statutory procedures, but argues that they nevertheless are admissible under ORS 136.432, which provides that—subject to limited exceptions not pertinent to this case—relevant evidence that is otherwise admissible may not be excluded on the ground that it was obtained in violation of any statutory provision. We agree with defendant and reverse and remand.

Defendant purchased some clothing with checks that were not honored by the bank because of insufficient funds. She was charged with one count of negotiating a bad check and one count of theft in the second degree. During the trial, the state called as a witness the operations supervisor of the bank at which defendant maintained her checking account. The state had subpoenaed the witness, but it had failed to serve defendant with a copy of the subpoena as required by ORS 192.565, which provides that a state or local agency obtaining bank records by subpoena must "make personal service of a copy of it upon the customer." Defendant objected to the testimony, arguing that, under ORS 192.590(5), any evidence obtained in violation of ORS 192.565 is inadmissible. On the same ground, she objected to the admission of any bank records introduced through the witness as well. The state argued that, although it had failed to comply with the statutory subpoena procedures, the evidence was admissible under section 1(f) of Ballot Measure 40, which provided generally for the admission of all relevant evidence. The court overruled defendant's objection and admitted the testimony and the bank records concerning defendant's checking account.

Shortly after the trial concluded, the legislature enacted ORS 136.432, which provides that "[a] court may not exclude relevant and otherwise admissible evidence in a

criminal action on the grounds that it was obtained in violation of any statutory provision," unless exclusion is required by the federal or state constitution, the rules of evidence concerning privilege and hearsay, or the rights of the press. The legislature made the statute applicable to all criminal actions pending or commenced on or after December 5, 1996.

Meanwhile, defendant appealed, arguing that the application of Ballot Measure 40 violated a variety of her constitutional rights. While the appeal was pending, the Supreme Court declared Ballot Measure 40 unconstitutional. *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998). The state then submitted its brief on appeal, arguing that, although Ballot Measure 40 had been declared unconstitutional, the admission of the bank records and testimony of the bank official still was proper under ORS 136.432. Defendant submitted a reply brief, arguing that ORS 136.432 is unconstitutional. In the alternative, defendant argues that the statute does not have the effect of superseding ORS 192.590(5), which requires the exclusion of bank records and related evidence obtained without following statutory procedures.

Defendant's constitutional challenges previously have been addressed and rejected. *State v. Fugate*, 154 Or App 643, 963 P2d 686 (1998), *rev allowed* 328 Or 275 (1999) (rejecting *ex post facto* and single subject challenges to ORS 136.432). We therefore turn to her alternative contention that ORS 136.432 does not have the effect that the state asserts. In so doing, we address a question of law, that is, the proper interpretation of the relevant statutes, looking first to the text in context and, if necessary, legislative history and other aids to interpretation. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

ORS 192.565 provides, in part:

"(1) A financial institution may disclose financial records of a customer to a state or local agency, and a state or local agency may request and receive such records, pursuant to a lawful summons or subpoena * * *.

"(2) The state or local agency issuing such summons or subpoena shall make personal service of a copy of it upon the customer."

ORS 192.590(5) then provides that "[e]vidence obtained in violation of ORS 192.550 to 192.595 is inadmissible in any proceeding." In this case, the state concedes that it failed to make personal service of a copy of its subpoena to the bank on defendant. The state further concedes that, but for the enactment of ORS 136.432, the failure to make that service would render the evidence obtained by means of the subpoena inadmissible under ORS 192.590(5). The state contends that ORS 136.432 has the effect of superseding ORS 192.590(5).

ORS 136.432 provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1)   The United States Constitution or the Oregon Constitution;

"(2)   The rules of evidence governing privileges and the admission of hearsay; or

"(3)   The rights of the press."

According to the state, the statute plainly provides that evidence obtained in violation of statutes such as ORS 192.565 cannot be excluded on that basis.

The state's reading of the statute is unobjectionable, as far as it goes. The statute clearly provides that relevant, "otherwise admissible" evidence may not be excluded merely because it was obtained in violation of another statute. The question in this case, however, is whether the evidence was "otherwise admissible." Defendant argues that it was not, because ORS 192.590(5) expressly provides that evidence obtained without following prescribed procedures is inadmissible "in any proceeding." According to defendant, ORS 136.432 was intended only to prohibit judicially created exclusion of evidence based on the violation of a statute. Defendant insists that ORS 136.432 was not intended to abrogate existing, legislatively enacted statutory provisions defining the extent to which evidence must be excluded.

■    The distinction that defendant draws between excluding evidence merely because a statute was violated

and excluding evidence because that is what a statute affirmatively requires is a plausible one. Obtaining evidence in violation of a statute does not automatically require exclusion of the evidence. *See State v. Trenary*, 316 Or 172, 176, 850 P2d 356 (1993) ("Violation of a law by law enforcement personnel does not necessarily require suppression."). The courts may require the evidence to be excluded to effectuate what they believe to be the purpose of the statute, or the legislature itself explicitly may require that evidence illegally obtained must be excluded. *Id.* In *State v. Dominguez-Martinez*, 321 Or 206, 214, 895 P2d 306 (1995), for example, the Supreme Court held that evidence obtained in violation of ORS 810.410—limiting the authority of police officers to investigate during the course of a traffic stop—is inadmissible. ORS 810.410 itself does not require exclusion. The court nevertheless required exclusion because it deemed exclusion necessary to effectuate the purpose of the statute. *Id.*

It could well be that, in enacting ORS 136.432, the legislature intended to address only the exclusion of evidence required by judicial ruling. The operative language, after all, is that "[a] *court* may not exclude relevant and otherwise admissible evidence." (Emphasis added.) To be sure, it is the courts that exclude the evidence, one way or the other. But the language is consistent with an intention to focus more narrowly on court-created rules of exclusion.

Indeed, that strikes us as the more plausible interpretation of ORS 136.432. The legislature has enacted a number of statutes that prescribe the conditions of admissibility of certain evidence in criminal proceedings. It is unlikely that the legislature intended to repeal all of those statutes without explicitly saying so.

ORS 41.910, for example, provides that evidence obtained in violation of the wiretap statute shall not be admissible. The state's broad reading of ORS 136.432 suggests that, as long as the evidence obtained in violation of the wiretap statute is relevant and otherwise admissible, it may not be excluded, even though ORS 41.910 expressly states that such evidence is inadmissible. ORS 136.435, for another example, provides that evidence obtained directly or indirectly as a result of a magistrate failing to provide the advice

of rights required in ORS 135.070 is inadmissible. The state's reading of ORS 136.432 suggests that the legislature intended implicitly to repeal that statute, as well. ORS 136.695, similarly, declares the inadmissibility of evidence procured through hypnosis without complying with statutory conditions. To adopt the state's reading of ORS 136.432, we would have to conclude that that statute also no longer means what it expressly says. ORS 813.160, for yet another example, states that, to be admissible in a civil, criminal, or administrative proceeding, breathalyzer tests must have been conducted in accordance with certain procedures. The state's reading of ORS 136.432 would require us to conclude that the legislature intended that evidence of breathalyzer tests would be admissible even though the tests were not conducted in accordance with statutory procedures. We find that highly improbable. We find it much more likely that the legislature intended that statute and other such statutes to remain in effect and that ORS 136.432 simply constrains the courts from creating rules of exclusion where the legislature itself has not created them, as in *Dominguez-Martinez*.

As a matter of purely textual exegesis, however, we cannot say that the matter is entirely free from doubt. Accordingly, we examine the legislative history. ORS 136.432 was introduced to the 1997 Legislature as section 1 of Senate Bill 936 (SB 936). In Senate hearings on the bill, the specific issue before us did not arise. In the course of hearings before the House Subcommittee on Criminal Law, however, some witnesses broadly claimed that SB 936 effectively would repeal the rules of evidence and render all relevant evidence admissible. In response to those witnesses, Mark Gardner, Special Counsel to the Attorney General, one of the drafters of the bill, specifically explained:

> "The assertion that Section 1's admission of relevant evidence repeals the Oregon Evidence Rules is untrue. Section 1 only applies to relevant evidence 'obtained' in violation of statute, *not relevant evidence excluded or made inadmissible by statute*."

Testimony, House Judiciary Subcommittee on Criminal Law, SB 936A, April 17, 1997, Ex D (statement of Mark Gardner) (emphasis added). Gardner's statement squarely supports

what we have suggested was the likely intention of the legislature, based on our reading of the text of ORS 136.432 in context.

The problem is that the testimony is not altogether consistent on the point. At another stage in the hearings before the House Subcommittee, Gardner testified that Section 1 would indeed have the effect of repealing other statutory rules of exclusion. He commented that the legislature could deter violations of statutes by attaching civil or criminal liability as a consequence of a violation without affecting the admissibility of the evidence. Testimony, House Judiciary Subcommittee on Criminal Law, SB 936A, April 17, 1997, Tape 89, Side A (statement of Mark Gardner).

Similarly, Multnomah County Deputy District Attorney Norm Frink, another of the bill's drafters, testified that "the idea that * * * somehow Section 1 of SB 936 repeals the various evidentiary reasons why evidence may not be admissible in court is simply not correct, because of the language of * * * Section 1 that expressly says 'otherwise admissible' evidence." He then went on to say, however, that the effect of Section 1 of SB 936 would be to permit the courts to suppress evidence only when the federal or state constitution so required. Testimony, House Judiciary Subcommittee on Criminal Law, SB 936A, April 17, 1997, Tape 89, Side A (statement of Norm Frink).

■ Relying on the statements of interested witnesses to reveal the intentions of the legislature is a tricky business in the best of cases. *See State v. Guzek*, 322 Or 245, 261, 906 P2d 272 (1995) (quoting *Errand v. Cascade Steel Rolling Mills, Inc.*, 320 Or 509, 539 n 4, 888 P2d 544 (1995) (Graber, J., dissenting) (examination of legislative history " 'is most fraught with the potential for misconstruction, misattribution of the beliefs of a single legislator or witness to the body as a whole, or abuse * * * when the views of only a small number of persons on a narrow question can be found' ")). That certainly is so in this case, in which the testimony of the small number of witnesses who spoke to the point in issue is itself ambiguous.

■ The legislative history failing to provide any clear indication of the legislature's intentions, we turn to relevant maxims of statutory construction. The most pertinent maxim

is the general rule that repeals of statutes by implication are disfavored. *See, e.g., State ex rel Huddleston v. Sawyer*, 324 Or 597, 604-05, 932 P2d 1145, *cert den* ____ US ____ , 118 S Ct 557, 139 L Ed 2d 399 (1997) (repeal by implication is disfavored); *State ex rel Med. Pear Co. v. Fowler*, 207 Or 182, 195, 295 P2d 167 (1956) ("[i]t is well settled that amendments or repeals by implication are not favored by the courts"). Only when the legislature's intention to repeal is clear will the courts give such effect to new legislation. *Id.* Of course, the legislature's intentions are best expressed in enacted language. But short of that, the intention to repeal may be revealed by the existence of an unworkable conflict between the new and old statutes. It bears emphasis, however, that the courts require that the conflict be " 'plain, unavoidable, and irreconcilable' " before an intention to repeal will be implied. *State v. Shumway*, 291 Or 153, 162, 630 P2d 796 (1981) (quoting *Mesick v. Duby*, 86 Or 366, 371, 168 P 628 (1917)). Such reluctance to give repealing effect to a statute that does not explicitly specify that intention is borne of judicial respect for the legislature's authority; courts generally are hesitant to invalidate prior statutes without very good evidence that the legislature intended new legislation to have that effect. *See generally* Singer 1A *Sutherland Statutory Construction* 23.10 (5th ed 1992) (because existing statutes reflect the popular will, courts are reluctant to find repeals by implication). It also reflects the legislative command that courts give harmonious effect to all relevant statutes wherever possible. ORS 174.010.

In this case, we find no such "plain, unavoidable, and irreconcilable" conflict between ORS 136.432 and the several existing statutory rules of evidentiary exclusion. As we have noted, the statutes may easily be read in harmonious fashion if ORS 136.432 is construed only to constrain the courts from creating new rules of exclusion and not to repeal existing statutory rules of exclusion. We therefore conclude that, on the basis of the text in context, the legislative history, and the relevant maxim of statutory construction, ORS 136.432 does not have the effect of superseding ORS 192.590(5), which requires that evidence obtained in violation of ORS 192.565 is inadmissible "in any proceeding." It follows that the trial court erred in admitting bank records and other evidence

that the state concedes were obtained in violation of ORS 192.565.

Reversed and remanded for new trial.